# CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470
(212) 225-2000
FACSIMILE (212) 225-3999
WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

LAURENT ALPERT
VICTOR I LEWKOW
LESLIE N SILVERMAN
ROBERT L TORTORIELLO
LEE C BUCHHEIT
JAMES M PEASLEE
ALAN L BELLER
THOMAS J MOLONEY
JONATHAN I BLACKMAN
MICHAEL L RYAN
ROBERT P DAVIS
YARON Z REICH
RICHARD S LINCER
STEVEN G HOROWITZ
JAMES A DUNCAN
STEVEN M LOEB
CRAIG B BROD
MITCHELL A LOWENTHAL
EDWARD J ROSEN
LAWRENCE B FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E AUSTIN
SETH GROSSHANDLER
WILLIAM A GROLL
HOWARD S ZELBO
DAVID E BRODSKY
MICHAEL R LAZERWITZ
ARTHUR H KOHN
RICHARD J COOPER
JEFFREY S LEWIS
PAUL J SHIM
STEVEN L WILNER
ERIKA W NIJENHUIS
LINDSEE P GRANFIELD
ANDRES DE LA CRUZ
DAVID C LOPEZ
CARMEN A CORRALES
JAMES L BROMLEY

MICHAEL A GERSTENZANG
LEWIS J LIMAN
LEV L DASSIN
NEIL Q WHORISKEY
JORGE U JUANTORENA
MICHAEL D WEINBERGER
DAVID LEINWAND
JEFFREY A ROSENTHAL
ETHAN A KLINGSBERG
MICHAEL J VOLKOVITSCH
MICHAEL D DAYAN
CARMINE D BOCCUZZI JR
JEFFREY D KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J RAYMOND
LEONARD C JACOBY
SANDRA L FLOW
FRANCISCO L CESTERO
FRANCESCA L ODELL
WILLIAM L MCRAE
JASON FACTOR
MARGARET S PEPONIS
LISA M SCHWEITZER
JUAN G GIRALDEZ
DUANE MCLAUGHLIN
BREON S PEACE
MEREDITH E KOTLER
CHANTAL E KORDULA
BENET J O'REILLY
DAVID AMAN
ADAM E FLEISHER
SEAN A O'NEAL
GLENN P MCGRORY
MATTHEW P SALERNO
MICHAEL J ALBANO
VICTOR L HOU
ROGER A COOPER
AMY R SHAPIRO

JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A BAREFOOT
PAMELA L MARCOGLIESE
PAUL M TIGER
JONATHAN S KOLODNER
RESIDENT PARTNERS

SANDRA M ROCKS
S DOUGLAS BORISKY
JUDITH KASSEL
DAVID E WEBB
PENELOPE L CHRISTOPHOROU
BOAZ S MORAG
MARY E ALCOCK
DAVID H HERRINGTON
HEIDE H ILGENFRITZ
HUGH C CONROY JR
KATHLEEN M EMBERGER
WALLACE L LARSON JR
JAMES D SMALL
AVRAM E LUFT
DANIEL ILAN
ANDREW WEAVER
HELENA K GRANNIS
GRANT M BINDER
MEYER H FEDIDA
JOHN V HARRISON
CAROLINE F HAYDAY
RESIDENT COUNSEL

LOUISE M PARENT
OF COUNSEL

November 6, 2014

BY ECF

Honorable Thomas P. Griesa
United States District Court for
the Southern District of New York
500 Pearl Street
New York, New York 10007

      Re: *NML Capital, Ltd. v. Republic of Argentina*, Nos. 08 Civ. 6978 (TPG), 09 Civ. 1707 (TPG) and 09 Civ. 1708 (TPG); and related cases

Dear Judge Griesa:

      I write on behalf of the Republic of Argentina (the "Republic") in response to Robert Cohen's letter, dated October 8, 2014, in which he states that, on top of the more than $1.6 billion in claims already subject to *pari passu* injunctions, plaintiffs in 52 other pre- and post-judgment actions will soon be seeking via two consolidated motions identical injunctions in connection with additional claims that total over $4.4 billion dollars (an amended letter from Mr. Cohen of the same date states that plaintiffs in another 50 actions similarly will be seeking *pari passu* relief).

      The practical impact of the existing *pari passu* injunctions has become clear since they went into effect this past June. They did not "end" the litigation as plaintiffs had assured the Court that they would when plaintiffs asked for this extraordinary relief. *See* Feb. 23, 2012 Hr'g Tr. at 3:6, 46:23 (counsel for NML stating that the Republic "has the resources" and would thus "pay the NML bondholders" in full).[1] Nor have they otherwise furthered a resolution of these disputes, given the legal and other financial constraints faced by the Republic and the

---

[1] Since June 16, 2014, 25 new suits have been filed in connection with claims for approximately $1.8 billion in principal and judgments totalling approximately $4.7 billion.

CLEARY GOTTLIEB STEEN & HAMILTON LLP OR AN AFFILIATED ENTITY HAS AN OFFICE IN EACH OF THE CITIES LISTED ABOVE

Honorable Thomas P. Griesa, p. 2

inordinate leverage these unprecedented orders give to plaintiffs, which was not and could not have been anticipated by anyone when plaintiffs' 1994 Fiscal Agency Agreement ("FAA") bonds were issued or when the Republic's Exchange Offers were made and accepted by over 92% of eligible debt, including the vast majority of FAA bondholders. Rather, as the Republic has at all times argued, including when asking for a stay, the injunctions have had only a negative effect: they have created *more* litigation, and for over four months now have prevented the third-party Exchange Bondholders from receiving the interest payments to which they are indisputably entitled. Press reports now indicate that certain of those Exchange Bondholders are preparing to accelerate their bond series, thereby exacerbating further the situation. The current equitable landscape thus differs materially from when the Court first entered the existing *pari passu* injunctions.

Plaintiffs' proposal here to increase by many billions the total amount of claims subject to injunctive relief further demonstrates the inefficacy of the *pari passu* injunctions and the impossible situation in which they put the Republic. As plaintiffs themselves acknowledge – and as demonstrated by the Court's November 3, 2014 Order broadening the Special Master's powers to cover discussions with additional Republic creditors – even that amount understates the full extent of the Republic's exposure to *pari passu* claims and the resulting threat to the Republic's economy, as additional billions of dollars of defaulted Republic debt remains outstanding on top of those claims. There can be no equitable basis for seeking to compel the Republic – whose reserves are approximately $28 billion and must be used for critical macroeconomic purposes – to do the impossible by paying in full its holdout debt, much of which was purchased at a deep discount in the secondary market with the aim of extracting through litigation better terms than the vast majority of the Republic's creditors who participated in the Republic's debt restructuring.

Beyond the equities, plaintiffs' forthcoming motions also raise new issues concerning the propriety of entering *pari passu* injunctions in cases where plaintiffs have already obtained money judgments on their claims. As the Republic has explained in previous correspondence to the Court, principles of res judicata and the merger doctrine bar plaintiffs from seeking specific performance of the *pari passu* clause after their contract claims have been reduced to judgment. Moreover, while the Second Circuit found that the Foreign Sovereign Immunities Act ("FSIA") did not prohibit entry of the existing injunctions in the pre-judgment context, in the post-judgment context the injunctions would clearly function as judgment execution devices that run afoul of the FSIA.

These and other critical issues will need to be fully briefed for the first time in connection with plaintiffs' consolidated motions. Any related briefing should accordingly proceed on a timetable that sufficiently permits the parties to address them, with at least six weeks for the Republic to submit its opposition papers.

Respectfully submitted,

Carmine D. Boccuzzi Jr.

cc: Counsel of Record (by ECF)